UNITED STATES, Appellant

v

JACK L. FISHER, Private, U. S. Marine Corps, Appellee

7 USCMA 270, 22 CMR 60

271

No. 8321

Decided August 17, 1956

*Captain Charles R. Larouche,* USMC, argued the cause for Appellant, United States. With him on the brief was *Lieutenant Commander Robert R. Marsh,* USNR.

*Captain R. D. Humphreys,* USMC, argued the cause for Appellee, Accused. With him on the brief was *Commander John W. Shields,* USN.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused in the case at bar was tried by a general court-martial for a violation of Article 85, Uniform Code of Military Justice, 50 USC § 679, under one specification alleging that he had absented himself without proper authority with intent to remain away therefrom permanently. He entered a plea of not guilty to the charge, but guilty to the lesser included offense of unauthorized absence. He was found guilty of desertion, and the sentence as adjudged and confirmed by the convening authority provided for dishonorable discharge from the service, two years' confinement at hard labor, and forfeiture of all pay and allowances. On appeal, the board of review concluded that the law officer had committed prejudicial error in admitting an exhibit showing that accused had previously been convicted of certain offenses, sentenced to eighteen months

272

confinement and a bad-conduct discharge, and later been restored to duty with a portion of the confinement and the punitive discharge suspended. To purge the prejudice, the board affirmed only a finding of unauthorized absence and consequently reduced the punishment to a bad-conduct discharge, forfeiture of all pay and allowances, and confinement for a period of one year. The Judge Advocate General of the Navy thereupon certified the case to us requesting that we answer the two following questions: (1) Did the board of review err in holding that the exhibit hereinabove described was improperly received in evidence? (2) Was the ruling of the law officer denying admission of another prosecution exhibit correct?

To understand properly the issues, it is necessary to summarize some of the testimony. To establish its case, the Government proved that the accused departed from his station on April 27, 1955, without authority, and remained away from the service until he was apprehended September 1, 1955. In seeking to strengthen the basis for the inference of an intent to remain away permanently, the Government sought to introduce two pages from accused's service record. The first disclosed prior convictions of desertion and absence without leave for separate periods (Exhibit 3). The second disclosed that the accused had been sentenced to eighteen months confinement and the usual accessories but, at the time he departed on this period of unauthorized absence, had been restored to duty on six months probation, with his bad-conduct discharge and nine months and ten days of his confinement suspended (Exhibit 4). The law officer excluded the first exhibit but admitted the second. It was his latter ruling which the board of review found to be erroneous.

The accused disclaimed any intent not to return to the service, and to support the disclaimer he testified in his own behalf. He furnished the court-martial with the following information: That at the time he absented himself he had served for three months in a new assignment; that he liked his

work and was adjusting satisfactorily; that prior to his last assignment, he had been confined at the Retraining Command to serve a sentence for a prior desertion; that he had endeavored to rehabilitate himself as he desired to remain in the Marine Corps; that he appeared before a clemency board and was restored to duty at his own request; that he had been married for five years and was the father of two young children; that he encountered difficulty in obtaining a service allotment for his wife and, as a result of being underpaid, his financial condition necessitated that he supplement his income; that he had overdue debts in the approximate amount of $400.00 which were a source of considerable worry and annoyance; that he left the base on liberty on April 26, 1955, with the intent to return the following morning; that that night he went to visit his wife who was staying with friends and, because of her pregnancy, decided to remain away from his organization and obtain civilian employment; that he obtained work in certain enumerated places and was able to reduce the amount of his indebtedness as a result of his increased income; that just before being apprehended he had started back to Camp Pendleton with two of his friends who were also absent without authority from the Marine Corps; that upon reaching Los Angeles, one of them agreed to loan him some money for the support of his family; that he thereupon returned to Bakersfield, California, and that while in that area he was apprehended by the Federal Bureau of Investigation. His wife corroborated some isolated portions of his testimony, particularly the financial difficulties encountered by them. Two officers and one technical sergeant attested to the accused's excellent military character.

While The Judge Advocate General of the Navy has requested that we answer two questions, we believe a discussion of the second concerning the admissibility of Exhibit 3 would place us in a position of merely monitoring a law officer on a decision which is immaterial to the present controversy.

The question involves a review of a ruling that evidence of a prior conviction for desertion was inadmissible. Assuming the law officer erred, the error was rendered harmless by the findings, and it was only one among many rulings made by him. We believe it would be an undesirable course for us to render advisory opinions on evidentiary rulings which are rendered during the course of the trial but which became immaterial by verdict. For present purposes, the law officer's ruling on the question certified is the law of the case, and by discussing its propriety we would furnish nothing but an academic discussion of the rules of evidence. Regardless of our views, it would make no difference in the ultimate outcome of this case, and it would not assist law officers in the field for the obvious reason that admissibility depends on a combination of many factors which change in each set of circumstances. We, therefore, have determined to consider only the merits of the first question.

The question we discuss has to do with Exhibit No. 4, which furnished the trial court with the following facts and circumstances: That the accused was sentenced on May 13, 1954, for a term of confinement of eighteen months; that his maximum release date was November 12, 1955, but with his good conduct allowance of 108 days, his minimum release date was July 27, 1955; that on January 14, 1955, the unexecuted portion of the sentence, including the punitive discharge, was suspended for six months, at which time, unless vacated, the suspended portion of the sentence was to be remitted without further action; and that the suspension permitted the accused to avoid serving nine months and ten days of confinement.

When the exhibit was offered and an objection was lodged, an out-of-court hearing was ordered. In support of the offer, the prosecution contended that the exhibit was relevant as it tended to cast light on the specific intent of the accused to remain away permanently from his unit. The defense counsel opposed the admission on the grounds that the exhibit would serve

only to show bad character on the part of the accused and that its probative value in establishing intent was so tenuous that the policy of the law was against its admittance. The law officer concluded that the exhibit was admissible, and we agree.

The first reason for affirming the law officer is that we consider Exhibit No. 4 admissible. For a starting point, we use paragraph 138*g* of the Manual for Courts-Martial, United States, 1951, which sets out the general rule. It provides:

> "*g. Evidence of other offenses or acts of misconduct of the accused.*— The general rule is that evidence that the accused has committed other offenses or acts of misconduct is not admissible as tending to prove his guilt, for ordinarily such evidence would be useful only for the purpose of raising an inference that the accused has a disposition to do acts of the kind committed or criminal acts in general and, if the disposition thus inferred was to be made the basis for an inference that he did the act charged, the rule forbidding the drawing of an inference of guilt from evidence of the bad moral character of the accused would apply. However, if evidence of other offenses or acts of misconduct of the accused has substantial value as tending to prove something other than a fact to be inferred from the disposition of the accused, the reason for excluding the evidence is not applicable."

The Manual goes on to set out a number of exceptions, but we need only discuss one, for the law officer did not err if the evidence was admissible under any exception. In this instance, if the evidence tended to prove intent to remain away permanently, it was admissible. To establish that element, evidence which would tend to establish a reason for not returning to the Service would have a direct bearing on the accused's intent.

The fact of absence without authority is not in dispute, for the accused judicially confessed to that offense. Therefore, the vital element which the

Government had to prove was his mental condition with respect to remaining away. Because it had to show that state of mind by circumstantial evidence, the Government could introduce facts which would motivate the accused not to return. If the questioned exhibit was relevant for that purpose, it could not be denied admission because of any auxiliary policy considerations. The policy in favor of exclusion does not operate to prevent the introduction of closely related relevant evidence on intent merely because it also reveals the commission of a separate crime.

The crime of desertion can be established by the showing of an absence with a concurring intent, at the commencement of or at some time during the absence, to remain away permanently. Facts which are not too remote and from which an inference to support that intent may be drawn are relevant. In applying those principles to the facts of this case, we can accept accused's story that he intended to return on the day following his leaving on liberty, but sometime thereafter he must have changed his mind, for he was apprehended by civilian officials some four months later. Accordingly, his state of mind during the period of absence is all important. Perhaps a suspended sentence involving a punitive discharge and nine months confinement might act as a deterrent to an accused who is contemplating the violation of the terms of his parole, but once having given cause for the vacation of the suspension, the reverse is true. This accused was not a violator of the law until he became a voluntary absentee, but from that time on he knew his misbehavior would subject him to double punishment, for he would be required to serve the time he had avoided when he was restored to duty, plus the confinement to be imposed for the most recent violation. One not under sentence for a previous absence might expect some clemency if he returned voluntarily, but one who is on probation when he offends can hardly hope for consideration. Therefore, the thought of having to finish up the remaining term of his old sentence and the knowledge that, in all events, he would be separated from the Service with a punitive discharge offered the accused good reasons for not returning. In addition, the time he would be confined for his latest offense would no doubt be substantial. So long as he could escape detection and apprehension, he would not be required to pay the penalty for either offense. However, immediately upon his return to military control, he was bound to be confined in prison. Certainly the penalties facing him upon return furnished him with a reason to remain away from the Service permanently. By his act of going absent without authority, he placed himself in a situation where he had his freedom while absent and could expect only bondage upon returning. Clearly the sword of the prior suspension hanging over his head would be one of the proper factors to be considered by the court-martial in determining accused's intent.

In United States v Muench, 14 CMR 857, an Air Force board of review gave extensive consideration to this question. By a divided court, that agency held evidence of a prior suspended sentence was admissible. A majority of the board reasoned as follows:

"It may be argued, and with considerable force, that a person under suspended sentence, and particularly one which involves a period of confinement and a dishonorable discharge, might well be deterred from committing another offense. This may all be well and true, but the argument has no validity *after* the offense has been committed—particularly is this true when we are dealing with the military offense of desertion. In dealing with such an intangible thing as intent in a desertion case, the existence of which can only be inferred from the over-all evidence in the case, it is necessary to view the matter subjectively, from the accused's viewpoint, as it were. Thus, *sometime after* the accused absented himself in this case on 10 June 1952—in fact *anytime* thereafter while he was in an absentee status— he could well reason, and with considerable logic, that if he returned

**275**

to military control he would not only be punished for his present unauthorized absence, but that in all likelihood the suspension of his previous sentence would be revoked and he would have to serve not only the punishment for the instant offense, but the additional confinement previously suspended from his previous conviction and would most likely receive his dishonorable discharge in any event. Especially might he reason that a greater punishment would be meted out to him for having committed the same (or similar) offense. He might well conclude that there was no point in his returning because he had nothing to gain and everything to lose. Viewed in this light, the evidence of the previous conviction, including the sentence and the subsequent action of suspension of that sentence certainly *does* have some value as to what his intent probably was (or at least well could be) during the period of his unauthorized absence. The value of such evidence becomes apparent when it is considered that, in a desertion case, the intent not to return to military control may be conceived and entertained not only at the time one absents himself, but *at any time thereafter while in the absentee status."*

The minority member expressed his views in a forceful manner, and we have considered his side of the controversy. Assuming for the purposes of this case that he expressed the better logic under the facts of that case, the deficiencies in the evidence of which he complains are not present in this case, and the principles which he contended were applicable would support the admission of this exhibit. Here the nature of the suspension is established definitely, it had not expired prior to the last absence, it was not remote in time, and if, as the accused testified, his intent was to return at the time he departed from the Service, there was a predicate for a finding that he changed his mind after he had offended.

In summation, we conclude the evidence of the suspended sentence had substantial evidentiary value, it threw light on the essential element of intent, and it clearly and positively assisted the court-martial in its determination of that issue. Regardless of how carefully it is scrutinized, by tending to show motive it bears on intent with sufficient force to overweigh countervailing auxiliary policy considerations and, therefore, was properly admitted in evidence.

The second ground for our affirmance is rooted in the principle that, assuming error, the accused ■ cured any possible prejudice by taking the witness stand and testifying to the same and even more damaging details than are found in the exhibit. When accused proceeded with his defense, he not only joined the prosecution in placing the evidence squarely before the court-martial, but also embellished the Government's showing.

In making his opening statement, trial defense counsel stated that the defense would establish that the accused had received a bad-conduct discharge for his prior unauthorized absence; that he had every opportunity to get out of the Service by having the punitive discharge executed but that he did not desire that action to be taken; that he worked hard to earn a suspension; that he was a career Marine enlisted man and it was his voluntary choice to seek a return to duty; that he exercised his choice by pleading for restoration which was granted to him; and that these acts show a desire and intent to remain in the Service rather than a purpose to avoid the duty. In testifying as a witness, the accused followed the outline set by his counsel. In addition, he volunteered the information that he was sentenced for desertion; that he was reduced from the rank of corporal by a general court-martial; that he felt obligated to make reparation to the Marine Corps for his bad conduct, and to show his desire to remain in the Service he went before the clemency board and pleaded for restoration; and that his latest absence was only temporary to place his financial house in order.

There is a generally accepted rule

of law to the effect that where a defendant objects to the introduction of evidence which is admitted, and afterwards introduces the same evidence himself, the admission of the testimony over his objection is not grounds for reversal, though the ruling was erroneous and the evidence incompetent or improper. United States v Hatchett, 2 USCMA 482, 9 CMR 112. The board of review seems to have tacitly recognized that principle, but concluded it did not apply because the admission of the exhibit in evidence compelled the accused to venture into an unwanted field. It may well be that if an accused is forced to dispute or explain testimony improperly admitted in evidence, he can complain on appeal that he has been prejudiced, but if he merely corroborates the Government's testimony or, as here, goes further and places before the court-martial even more damaging information on the same subject matter, he has lost his right to complain about the harm done to his cause. An accused may be compelled to answer or explain incompetent evidence and thus be forced into a compromising position, but he is not required to prove the same facts he complains about. In this instance, the most damaging piece of evidence was accused's own testimony that he had been convicted of desertion, but the law officer did not permit the Government to introduce that evidence. It was placed before the court-martial voluntarily by the accused to support his theory of defense. That theory was intended to capitalize on the evidence of previous convictions by showing that he had a chance to terminate his relationship with the Service, which he voluntarily rejected because he intended to make a career in the Marine Corps. He would now cast aside that theory and try another, but the choice is longer his to make.

The accused did not assert at trial that he felt obliged to take the stand because of the law officer's ruling, and he could have elected to stand on his objection. Instead, he chose to use that part of the exhibit which was favorable to him and corroborate its entire contents. Therefore, had the law officer's ruling been erroneous, the accused was not thereby prejudiced, for he thereafter successfully cured the error.

The first certified question is answered affirmatively, and for the reasons stated, the second is not answered at all. The decision of the board of review is reversed. The record is returned to The Judge Advocate General of the Navy for reference to the board of review for further proceedings not inconsistent with this opinion.

Judge FERGUSON concurs.

QUINN, Chief Judge (concurring):

I fully agree with the principal opinion's discussion of the certified question regarding prosecution Exhibit 3. As to prosecution Exhibit 4, I concur with the majority on the ground that, by his own testimony, the accused cured any possible error in its admission. See my separate opinion in United States v Trojanowski, 5 USCMA 305, 314, 17 CMR 305.