UNITED STATES, Appellant

v

WILLIAM G. MIASEL, Private E–1, U. S. Army, Appellee

8 USCMA 374, 24 CMR 184

No. 9459

Decided November 8, 1957

*Captain Thomas J. Nichols* argued the cause for Appellant, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton, First Lieutenant Richard W. Young,* and *First Lieutenant Peter J. Hughes.*

*First Lieutenant Arnold I. Melnick* argued the cause for Appellee, Accused. With him on the brief were *Colonel J. M. Pitzer, Colonel Edward M. O'Connell,* and *Captain John F. Christensen.*

## Opinion of the Court

HOMER FERGUSON, Judge:

This is another in a series of cases which has reached this Court involving a bizarre and sordid incident which oc-

curred in the post stockade, Fort Polk, Louisiana, in May of 1956.[1] The accused was convicted of assaulting one Medlock, with intent to commit sodomy, "by having said Medlock held upon a bed and tied down," in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. His conviction was approved by the convening authority but later reversed by a board of review on an evidentiary question. The Judge Advocate General of the Army thereafter certified the following issue for this Court's consideration:

Was there prejudicial error in the admission of evidence concerning subsequent acts of sodomy?

The facts, as stated by the board of review in its opinion, are accurate and concise and are herewith set forth in their entirety:[2]

"The accused and six other soldiers in confinement at the Post Stockade at Fort Polk, Louisiana, were involved in the events which made up the offense with which the accused is charged. The group, led by a prisoner named Knight, awakened the victim, Medlock, who was asleep in the prison barracks. Knight grabbed Medlock telling him he was going to commit an act of sodomy upon him. Two others tied Medlock's arms to the bed while Knight disrobed the victim. The accused held the victim's leg during a part of this struggle. After a while the attackers released Medlock and subjected him to a 'GI' shower, after which they brought him back to his bed where Knight placed shaving cream on Medlock's anus. The accused lay on the bed with the victim while handling his own exposed private parts. However, the accused shortly withdrew from the bed without having touched the victim with his private parts. Knight objected to the accused's failure to consummate the act and directed him to resume but the accused answered he was unable to do so. Another prisoner participant directed the victim to put on his clothes, after which Medlock and three of the group—but not the accused, left the room.

"The accused is 18 years old. He admitted generally the facts as outlined above, but testified that the whole thing was a joke and that he never, at any time intended to commit an act of sodomy. Moreover, he believed that no one else in the group intended to do so. One of the prisoners in the group (Morgan) had been 'bullying' him and on one occasion knocked him down. To avoid an altercation with this prisoner whom he feared, he thought he should get on the bed and pretend he was going to commit sodomy. He thought he would thus be a 'big shot' in the eyes of the bully, and forestall the latter from doing to him what was being done to the victim. He admitted making the statement while on the bed with the victim that he 'got the head in' but claimed that it was a false statement made pursuant to the plan outlined. He denied ever touching the victim or ever intending to commit sodomy. The fact he did not actually touch the victim with his private parts was corroborated by the victim.

"The prosecution, in its case in chief, also presented evidence of what happened to the victim after he and three other prisoners left the barracks room where the alleged offense occurred. The accused was no longer present and apparently had no knowledge of what transpired. Medlock was taken to another building and later to a space beneath the Day Room, where the three attackers, including Knight and Morgan, removed his pants and, holding him down, each in turn committed anal sodomy upon him. While there was no objection to this evidence offered at the trial,

[1] United States v Morgan, 8 USCMA 341, 24 CMR 151, concerned another participant in this incident. The issue involved there, however, is not present in the instant case. A petition for grant of review in the case of United States v Knight, Docket No. 9212, involving another participant of the incident, was denied by this Court on November 30, 1956.

[2] United States v Miasel, 22 CMR 562.

one of the errors assigned by appellate defense counsel is the admission of this separate offense of sodomy, in which the accused was not involved."

The board held that the admission of evidence of subsequent acts of sodomy committed by the other members of the group after leaving the barracks was prejudicial error. Such evidence, in its opinion, had "little or no relevance with regard to the accused's specific intent, which is the crucial issue in this case." We agree with the board's decision.

The law is well settled that the acts and declarations of a conspirator or co-actor, pursuant to, and in furtherance of, an unlawful combination or crime, are admissible against all co-conspirators or co-actors during the existence of the conspiracy. Delli Paoli v United States, 352 US 232, 77 S Ct 294, 1 L ed 2d 278; Clune v United States, 159 US 590, 16 S Ct 125, 40 L ed 269; Logan v United States, 144 US 263, 12 S Ct 617, 36 L ed 429. Although the accused here was not charged with conspiring with others to commit the offense alleged, the evidence clearly establishes that he acted in concert with others pursuant to a common plan or enterprise. Under such circumstances, "the rule for the admission of evidence against co-actors is substantially the same as that applied in cases involving co-conspirators." United States v Long, 2 USCMA 60, 6 CMR 60. Accord, Robinson v United States, 33 F2d 238 (CA9th Cir) (1929). Wharton, Criminal Evidence, 11th ed, § 699, page 1183, states the principle in the following manner:

"Where several persons are proved to have unlawfully conspired to commit a crime, the acts and declarations of any conspirator pending such conspiracy, and in furtherance thereof, are admissible as substantive evidence against any co-conspirator on trial. *The same rule is applicable and the same principles control in the case of an unlawful combination of persons though not necessarily a conspiracy. That is, persons may not conspire to commit a crime, or the prosecution may be unable to prove a conspiracy, but yet the evidence adduced may show that the persons involved in a crime were acting in concert in the commission of the crime charged. In such case, then, the rule applies that where several persons are proved to have acted in concert in the commission of a crime, and have thus combined for the same unlawful purpose, the acts and declarations of the one co-actor in pursuance of the common act or design are admissible against any other co-actor on trial for the crime.* When once the conspiracy or combination is established, the act or declaration of one conspirator or accomplice in the prosecution of the enterprise is considered the act or declaration of all, and therefore imputable to all. All are deemed to assent to, or command, what is said or done, by anyone in furtherance of the common object." [Emphasis supplied.]

We therefore look to the rules of evidence applicable to the crime of conspiracy in the instant case.

In order to permit evidence concerning the incident which occurred after the group departed the barracks to be admissible against the accused, it must be shown that he had continued to associate himself and be connected with the common enterprise or venture. For once a joint enterprise has ended, either as a result of accomplishment of the objective, abandonment, or withdrawal of any of the members of the group, subsequent acts and declarations can affect only the actor or declarant. Fiswick v United States, 329 US 211, 67 S Ct 224, 91 L ed 196; Krulewitch v. United States, 336 US 440, 69 S Ct 716, 93 L ed 790; Delli Paoli v United States, supra; Logan v United States, supra. Participation in a criminal conspiracy may be shown by circumstantial as well as direct evidence. Delli Paoli v United States, supra; Blumenthal v United States, 332 US 539, 68 S Ct 248, 92 L ed 154. Likewise, a withdrawal from a conspiracy may be shown by any evidence indicating conduct "wholly inconsistent with the theory of continuing adherence." Buhler v United States, 33 F2d 382 (CA

9th Cir) (1929). In Poliafico v United States, 237 F2d 97 (CA6th Cir) (1956), the Court of Appeals said that in order to withdraw from a conspiracy "affirmative action is required." Accord, Marino v United States, 91 F2d 691 (CA9th Cir) (1937). Cf. Stephens v United States, 41 F2d 440 (CA9th Cir) (1930), where the accused's acts were not sufficient to show that he had severed all connection with the conspiracy. Here, however, the board ■ found that the accused had fully terminated his participation in the group's conduct before a portion of the group had left the barracks with the victim, after which the various acts of sodomy were committed. The failure of the accused to accompany the group when they left the barracks is indicative of an affirmative act on his part to effect a withdrawal and constitutes conduct wholly inconsistent with the theory of continuing adherence. The evidence of record amply supports the board's finding in this matter.

The Government, in seeking reversal of the board's decision, argues that the failure on the part of the ■ defense counsel to object to evidence concerning subsequent acts of sodomy, together with the fact that defense counsel "touched" on the same matter in cross-examination, reflects a waiver based on trial tactics. United States v Snyder, 6 USCMA 692, 21 CMR 14. Several instances are cited where defense counsel, in cross-examining prosecution witnesses, referred to the incident which occurred under the Day Room. Close scrutiny of these questions, however, indicates that they were asked for the purpose of eliciting testimony to the effect that the accused had not accompanied the group outside the barracks, nor had he been seen under the Day Room. This, we believe, falls far short of evidencing an intent on the part of defense counsel to re-introduce evidence of the subsequent incident as a considered trial tactic. The limited references to the incident take the form of rebuttal prompted by the prosecution's introduction of the inadmissible evidence. In United States v Fisher, 7 USCMA 270, 22 CMR 60, the Court recognized that an occasion may arise where an accused "may be compelled to answer or explain incompetent evidence and thus be forced into a compromising position." Here, the defense, in order to perfect its theory—that the accused's participation in the venture terminated when the group left the barracks—sought to show that the accused was in no way connected with the more heinous offenses subsequently committed. The record fails to show the considered and informed election on the part of the defense counsel sufficient to waive objection to the inadmissible testimony elicited on direct examination. United States v Stewart, 7 USCMA 232, 22 CMR 22.

The Government next contends that notwithstanding the question of waiver, evidence relating to the ■ subsequent acts of sodomy were admissible against the accused under either of three separate theories. The first theory proceeds on the premise that the accused was engaged in a group endeavor, and therefore his guilt could be predicated on the doctrine of aider and abettor. Accordingly, any evidence, which is relevant to establish the principal's intent, would be admissible in the prosecution of an aider and abettor. The flaw in the application of this theory to the instant case lies in the fact that the board of review, in the exercise of its fact-finding powers, concluded that two separate and distinct incidents occurred—the barracks incident and the incident under the Day Room—and that the accused's participation was exclusively limited to the former. Stated differently, the board of review found that when the group departed the barracks in the company of the victim, they took the venture with them and at that point the accused's withdrawal from the group became effective. Anything that the group may have done after they had left the barracks could have no bearing on the guilt or innocence of the accused on the charge based upon the first incident. To be guilty under the theory of aider and abettor, it would be necessary to prove that the accused had knowledge of the intent of his co-actors and that he shared their criminal intent and purpose. Paragraph 156, Manual for

Courts-Martial, United States, 1951. Here, it would be manifestly unjust to permit evidence of the second incident to be used against the accused where such incident occurred outside his presence and without his knowledge. Under such circumstances, we cannot impute the intent of the group to the accused. Turning now to the second theory advanced, the Government urges that a conspiracy in fact existed ▮ and that evidence was therefore admissible to characterize the nature of the group venture and to establish the purpose and intent of the cooperative endeavor. Lutwak v United States, 344 US 604, 73 S Ct 481, 97 L ed 593, is relied on in support of this theory. In that case the defendants were convicted of conspiring to defraud the United States, and to commit offenses against the United States, by illegally obtaining the entry of aliens as spouses of veterans who had entered into foreign marriage ceremonies with the aliens. The trial court permitted the prosecution to introduce evidence that the aliens and veterans lived apart after coming to the United States, that money was paid to the veterans for their part in the so-called marriages, and that suits were started to terminate whatever legal relationship might have existed. The Supreme Court held that such evidence was properly admitted. In the course of its opinion, it said:

"It does not necessarily follow that acts and declarations made after the conspiracy ended are not admissible. In this case, the essential fact of the conspiracy was the existence of phony marriage ceremonies entered into for the sole purpose of deceiving the immigration authorities and perpetrating a fraud upon the United States. *Acts* which took place after the conspiracy ended which were relevant to show the spuriousness of the marriages and the intent of the parties in going through the marriage ceremonies were competent—such as the fact that the parties continued to live apart after they came to the United States; that money was paid the so-called wives as a consideration for their part in the so-called marriages;

and that suits were started to terminate whatever legal relationship there might have been upon the record."

The Lutwak case, supra, however, does not resemble the present one. There, the evidence was admissible to prove that a conspiracy had in fact existed. Here, the acts which occurred after the barracks incident, although relevant on the question of the intent of the group during the earlier incident, in which the accused had participated, could have no relevancy on the question of the accused's specific intent to commit the offense charged.

This brings us to the final theory advanced by the Government. It is submitted that the entire case ▮ establishes one continuing transaction, which the Government is entitled to prove from beginning to end. This contention is equally untenable for it is directly contrary to the board's finding isolating the entire transaction into two separate incidents. We cannot say that such finding is unsupported by the record.

It is impossible to say with fair assurance in this case that the court-martial was not substantially ▮ influenced by the use of the inadmissible evidence against the accused. Though we assume there was enough evidence to sustain the accused's conviction, the case was one which the prosecution would be anxious to bolster. The accused had testified that he had no intent to commit sodomy; that he never touched the victim; that he participated in the incident unwillingly; and that the entire affair was but a harmless joke which had been carried too far. The victim substantially corroborated much of the accused's testimony. This is clearly not a case for the imposition of the harmless error doctrine. Article 59, Uniform Code of Military Justice, 10 USC § 859. We are persuaded that the erroneous admission of the evidence complained of may well have been "the weight that tipped the scales" against the accused. Krulewitch v United States, supra. Accordingly, we are constrained to conclude that the decision of the board of review must be affirmed.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

In view of accused's theory of the case that the group was merely playing a joke on the victim, a defensible position on the admissibility of the testimony can be taken. However, a discussion of that issue is unnecessary, as defense counsel's failure to object to the admission of evidence is a waiver precluding its appellate consideration, unless the application of that doctrine would cause a manifest miscarriage of justice. United States v Masusock, 1 USCMA 32, 1 CMR 32; United States v Stewart, 7 USCMA 232, 22 CMR 22. The majority resolves nothing upon this issue and when I look at the record I find such compelling evidence of guilt of the crime charged that there is no question of that nature involved.

One further principle discussed by the board of review must be considered. As a secondary ground to sustain its reversal the board reasoned:

"Even if it could be assumed that the evidence was admissible as relevant on the secondary issue of group intent, its admission without some limiting instructions raises more than a fair risk of prejudice to the accused. The group intent especially, where based on a separate offense committed without the presence or knowledge of the accused cannot be imputed to the accused. His specific intent must be separately determined. . . . The danger of this type of guilt by association reasoning is manifest. Disaffirmance of the findings is required."

There was no request for such limiting instruction by defense counsel in this case and therefore the language of United States v Haimson, 5 USCMA 208, 231, 17 CMR 208, which follows, controls.

"The only instruction to which the accused was entitled would have been one to the effect that the members of the court might not permissibly consider the evidence of specific misconduct as showing an evil disposition, or criminal propensity, on the accused's part, and from the fact of that disposition infer that he had committed the offenses alleged. Such an instruction would certainly have been appropriate. But the law officer —we are equally sure—was under no duty *sua sponte* to charge the court regarding this aspect of evidence. The burden of requesting such an instruction rested on defense counsel. Cf. United States v Johnson, 3 USCMA 709, 14 CMR 127; United States v. Schumacher, 2 USCMA 134, 7 CMR 10."

I would reverse the decision of the board of review.