UNITED STATES

v.

**Staff Sergeant Clifton E. BROWN, Jr., FR 257–80–3674 United States Air Force.**

**ACM 22570.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 23 March 1979.

Decided 24 April 1980.

Appellate Counsel for the Accused: Colonel Larry G. Stephens and Major Wade B. Morrison.

Appellate Counsel for the United States: Colonel James P. Porter and Lieutenant Colonel William H. Seckinger, USAFR.

Before HERMAN, ARROWOOD and MILES, Appellate Military Judges.

### DECISION

MILES, Judge:

Contrary to his pleas, accused was convicted by general court-martial of conspiracy to commit larceny, four larceny offenses, four blackmarketing offenses and a sale of marijuana in violation of Articles 81, 121, 92 and 134, respectively, Uniform Code of Military Justice, 10 U.S.C. §§ 885, 892, 921 and 934. He was sentenced to a bad conduct discharge, confinement at hard labor for two years, total forfeitures and reduction to airman basic.

In their first assignment of error, accused's appellate counsel assert that the evidence as to specifications 3 and 4 of Charge II, alleging specific larcenies, is insufficient to support findings of guilty. We agree, dismiss those specifications and modify the conspiracy charge, and reassess the sentence based on the remaining findings of guilty, as modified.

The evidence before the court established that on four separate days, a group of Korean nationals entered Osan Air Base Korea to remove, without authority, aluminum runway matting, property of the United States government. A truck and several laborers were used to accomplish this work. On 11 November 1978, the enterprise was interrupted by a security police patrol and arrests were made.

The guilt of the accused was based on the claim that he was a conspirator in the entire criminal enterprise. The specification of Charge I, conspiracy, asserts that the accused conspired with named and unnamed Korean nationals, and an Airman First Class Natalello, to steal aluminum runway matting valued in excess of $10,000.00. The overt acts alleged were thefts on 8 October, 4 November, 8 November and 11 November. The four specifications of Charge II allege separate larcenies of aluminum runway matting valued in excess of $4,000.00, $8,000.00, $4,000.00, and $5,000.00 on those respective days.

The conspiracy was proved by indirect evidence, principally the facts and circumstances of the thefts. The evidence established that the accused was present on 8 October and 4 November, directed the loading of the matting onto the Korean truck which was used, and acted as the security police escort officer both at the scene of the loading and when the truck drove off base. Although accused was a security policeman, his normal duties and place of duty, as assistant flight chief of the customs section, would not involve acting as a security police escort officer for materials being removed from the base. Accused's guilt as to specifications 3 and 4 of Charge II, the thefts of 8 November and 11 November, rested on

the indirect evidence of the conspiracy and his involvement in the first two thefts. Essentially, the same Korean nationals were involved in all four thefts. There was no evidence accused was present on 8 and 11 November.

Indeed, the evidence established that accused was hospitalized from 9 through 12 November. Some evidence showed that Airman Natalello, another security policeman, was present during the last two offenses. There was no evidence that the accused and Airman Natalello knew each other, nor was there any evidence the accused was involved in the planning or execution of the last two thefts or that he even knew about them.

■ The existence of a conspiracy may be proved by circumstantial evidence as well as by direct evidence. *United States v. Salisbury*, 14 U.S.C.M.A. 171, 33 C.M.R. 383 (1963). As the Manual for Courts-Martial, 1969 (Rev.), paragraph 160 states:

The agreement in a conspiracy need not be in any particular form nor manifested in any formal words. It is sufficient if the minds of the parties arrive at a common understanding to accomplish the object of the conspiracy, and this may be shown by the conduct of the parties.

■ During the existence of a conspiracy, each conspirator is liable for all the acts of other members of the conspiracy done in pursuance of the conspiracy unless he abandons or withdraws from the conspiracy. MCM, 1969, *supra*, paragraph 160; *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *Boyd v. United States*, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077 (1892). Vicarious criminal liability as a conspirator is very similar to criminal liability as an aider and abettor, or co-actor, as both theories of criminal liability are closely intertwined. See *United States v. Mahoney*, 19 U.S.C.M.A. 495, 42 C.M.R. 97 (1970); *United States v. Salisbury, supra; United States v. Miasel*, 8 U.S. C.M.A. 374, 24 C.M.R. 184 (1957); *United States v. Jackson*, 6 U.S.C.M.A. 193, 19 C.M.R. 319 (1955). The test for liability as a co-actor, for example, is set forth in MCM, 1969, *supra*, paragraph 156, as follows:

If there is a concert of purpose to do a given criminal act, and that act is done by one of the parties, all probable results that could be expected from the act are chargeable to all parties concerned; but in order to make one liable as a principal in such a case, the offense committed must be one embraced by the common venture or an offense likely to result as a natural and probable consequence of the offense directly intended.

■ Accordingly, to establish that an accused aided and abetted in the commission of an offense and was, therefore, liable as a principal, it must be shown that he acted in concert with the actual perpetrators and consciously shared the criminal intent which they entertained. *United States v. Lyons*, 11 U.S.C.M.A. 68, 28 C.M.R. 292 (1959). See also *United States v. Buchana*, 19 U.S.C. M.A. 394, 41 C.M.R. 394 (1970); *United States v. McCarthy*, 11 U.S.C.M.A. 758, 29 C.M.R. 574 (1960); *United States v. Miasel, supra*, and *United States v. Jackson, supra*.

■ In the case at bar, accused's potential liability for the last two theft offenses was premised, under the military judge's instructions, on the liability of a conspirator. Our difficulty is the paucity of evidence as to the scope and object of the conspiracy, the existence of which was only established indirectly by evidence of the thefts themselves. We can not, by inference, also extend the conspiracy to later criminal acts as to the accused, absent any evidence that he participated in planning or executing the acts, derived benefit therefrom, or even knew of them. In short, the evidence as to accused's guilt of Charge I, to the extent it alleges events after 7 November 1978 and includes the name of Airman First Class Natalello, is insufficient, and that finding is modified by deleting such references. The evidence as to specifications 3 and 4, Charge II, alleging thefts on 8 and 11 November, is insufficient to convict the accused. The findings of guilty of those offenses are set aside and those specifications are dismissed.

We have considered the other assignments of error and have resolved them adversely to the accused. Reassessing the sentence based on the remaining findings of guilty, as modified, we find appropriate only so much of the sentence as provides for a bad conduct discharge, confinement at hard labor for 18 months, total forfeitures and reduction to airman basic.

As modified, the findings of guilty and the sentence are

AFFIRMED.

HERMAN, Senior Judge, and ARROWOOD, Judge, concur.