**561**

## UNITED STATES

v.

**Airman Tobin K. HEWITT, FR 174–52–1426, United States Air Force.**

**ACM 22684.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 11 Oct. 1979.

Decided 14 Oct. 1980.

Appellate Counsel for the Accused: Colonel Larry G. Stephens and Major Robert G. Gibson, Jr.

Appellate Counsel for the United States: Colonel James P. Porter and Captain James H. DeAtley, USAFR.

Before POWELL, MILES and MAHONEY, JJ.

### DECISION

PER CURIAM:

We hold the accused's plea of guilty to conspiracy to sell marijuana in the hashish form to be provident despite appellate defense counsel's claim that the accused never admitted he entered into any such agreement.

Consistent with his pleas, the accused was convicted of conspiracy to sell hashish as well as sale, use and possession of hashish in violation of Articles 81 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 934. Despite his pleas, he was also convicted of separate offenses of possession of marijuana and hashish. The approved sentence extends to a bad conduct discharge, confinement at hard labor for eighteen months, total forfeitures and reduction to airman basic.

The accused was observed selling hashish by an undercover Air Force Office of Special Investigations (OSI) agent, Ms. S, on four occasions prior to 1 March 1979. One sale was made to her. On 1 March, the accused made a further sale to S. At that time, as well as earlier, she told the accused that she wanted to buy a larger quantity of hashish, apparently an amount larger than the accused could sell. As a result, the accused arranged for S to meet a Sergeant Kitchen for this larger buy. The stipulated facts at trial were that the accused and Kitchen agreed to sell the hashish to S while in the accused's barracks room, and that subsequently, pursuant to the agreement, Kitchen sold 99 grams of hashish to S in a different barracks room. The accused's participation in the arrangements, which date back to early February, forms the basis for the conspiracy offense.

Appellate defense counsel now claim that the accused, because he was unable himself to sell the larger quantity, simply introduced S to Sergeant Kitchen and that the accused never acknowledged the existence of a conspiracy. In support of their claim of an improvident plea, they point to accused's statement during the *Care** inquiry that he did not profit from this transaction and did not participate in all the discussions between S and Sergeant Kitchen.

In our view, acceptance of accused's plea is supported in law and fact by the record, and the claim of improvidency is without merit.

■ During the existence of a conspiracy, each conspirator is liable for all of the acts of other members of the conspiracy done in pursuance of the conspiracy unless he effectively abandons or withdraws from the conspiracy. Manual for Courts–Martial, 1969 (Rev.), paragraph 160; *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *Boyd v. United States*, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077 (1892). The scope and extent of a conspiracy must be determined from the available record. *United States v. Kidd*, 13 U.S.C.M.A. 184, 32 C.M.R. 184 (1962). Its existence may be proved by circumstantial as well as by direct evidence. *United States v. Salisbury*, 14 U.S.C.M.A. 171, 33 C.M.R. 383 (1963); *United States v. Brown*, 9 M.J. 599 (A.F.C.M.R.1980), pet. denied, 9 M.J. 413 (C.M.A., 1980). As the Manual for Courts–Martial, *supra*, paragraph 160, states:

The agreement in a conspiracy need not be in any *particular form nor manifested in any formal words*. It is sufficient if the minds of the parties arrive at a *common understanding to accomplish the object* of the conspiracy, and this may be *shown by the conduct of the parties*. The agreement need not state the means by which the conspiracy is to be accomplished or what part each conspirator is to play. (Emphasis supplied)

* *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

■ In this case, we are convinced that the accused and Sergeant Kitchen arrived at a common understanding to sell hashish. In addition to the discussion on 1 March the accused had talked with Kitchen about this larger sale to S in early February. We find no reason to question the providency of accused's plea. Accused fully acknowledged the existence of the conspiracy during the *Care* inquiry as the following demonstrates:

MJ: And was there any overt understanding or public understanding between yourself and Kitchen that he was going to make that sale to her?

Acc: Yes, sir.

\*    \*    \*    \*    \*    \*

MJ: Did you understand at the time that you were bringing Kitchen in and at the time you were suggesting to [S] that she buy from him that when you what you were agreeing to do was a violation of the Uniform Code of Military Justice?

ACC: Yes, sir.

MJ: Specifically, that you were being a party to a wrongful sale of marijuana?

ACC: Yes, sir.

MJ: And that you were, in essence, making an agreement with Kitchen that he would make the wrongful sale to [S]?

ACC: Yes, sir.

MJ: Any question in your mind about that?

ACC: No, sir.

MJ: Now, do you also acknowledge that while the agreement took place or while you were still involved in that particular series of events, that, in fact, the sale did take place?

ACC: Yes, sir.

MJ: Okay, you knew that it took place?

ACC: Yes, sir.

MJ: And you knew that it took place in furtherance of that arrangement that you'd made and that agreement that you had with Kitchen, as well as with [S]?

ACC: Yes, sir.

MJ: Any question in your mind about that?

ACC:   No, sir.

MJ:   You are certain that the transfer did take place?

ACC:   Yes, sir.

MJ:   And that the substance transferred was hashish?

ACC:   Sir, I couldn't be certain of that, because I didn't see what he handed her.

MJ:   Did you believe that it was hashish?

ACC:   Yes, sir.

MJ:   And that's certainly what you had foreseen in making that agreement?

ACC:   Yes, sir.

Accordingly, the findings of guilty and the sentence are

AFFIRMED.

**UNITED STATES**

v.