UNITED STATES, Appellee

v

ROBERT L. GILMORE, Specialist Five,
U. S. Army, Appellant

15 USCMA 428, 35 CMR 400

No. 18,318

June 18, 1965

*Captain Clifford B. Hearn, Jr.,* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Lieutenant Colonel Jacob Hagopian.*

*Captain Richard J. Andriolo* argued the cause for Appellee, United States. With him on the brief were *Colonel Edwin G. Schuck* and *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

FERGUSON, Judge:

Apprehended on May 18, 1964, after being absent without leave from his organization since October 19, 1962, the accused was tried by general court-martial and found guilty of desertion, in violation of Uniform Code of Military Justice, Article 85, 10 USC § 885. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for three years, and reduction. The convening authority reduced the terms of confinement imposed to two years, but otherwise approved the penalty. The board of review, affirming only so much of the sentence as provided for bad-conduct discharge, total forfeitures, confinement at hard labor for fifteen

months, and reduction, upheld the accused's conviction below. We granted his petition for review upon the assignment that:

"THE GIVING OF THE SO-CALLED 'DYNAMITE INSTRUCTION' BY THE LAW OFFICER TO THE COURT PRIOR TO FINDINGS WAS MANIFESTLY IMPROPER AND OF PREJUDICE TO THIS ACCUSED."

Following presentation of the case and completion of arguments by counsel for both sides, the law officer properly advised the court of the elements of the offense charged and other pertinent matters. In addition, before the court closed to deliberate, the law officer instructed as follows:

"We turn next to the problem of

428

voting. The deliberations by the court may properly include free discussion of the merits of the case. Discussion may follow as well as precede the voting. All members should have a full and fair opportunity to exchange their points of view and to persuade others to join them in their beliefs. It is generally desirable to have the theories for both the prosecution and the defense weighed and debated thoroughly before final judgment.

"Each member should listen, with a disposition to be convinced, to the opinions and the arguments of the others. It is not intended that a member should go to the deliberation room with a fixed determination that the verdict shall represent his opinion of the case at that moment. Nor is it intended that he should close his ears to the arguments of other members who are equally honest and intelligent with himself. But you are not to yield your judgment simply because you may be outnumbered or outweighed."

Appellate defense counsel level their attack at the second paragraph of the quoted instruction, contending that it left the court members with no alternative but to agree and was designed "to stampede them into a hurry up, compromise verdict should any dispute as to guilt or innocence in the instant case arise." Pointing out the instruction is similar to the so-called "dynamite charge" involved in Allen v United States, 164 US 492, 41 L ed 528, 17 S Ct 154 (1896), it is also argued such an instruction is designed only to break a deadlock among jurors; that there can be no such deadlock in deliberations on the findings in military law; and that, in any event, the law officer here delivered the advice before any disagreement arose among the members. In sum, it is urged the instruction had a prejudicial tendency to coerce the fact finders into concluding accused was guilty. We reject these contentions.

First, delivery of instructions of this nature is not limited to instances in which jurors or, as in this case, court members, have reported an inability to agree to the presiding judge or law officer. Janko v United States, 281 F2d 156 (CA8th Cir) (1960); Nick v United States, 122 F2d 660 (CA8th Cir) (1941), cert den, 314 US 687, 86 L ed 550, 62 S Ct 302 (1941); United States v Reid, 210 Fed 486 (D Del) (1913); United States v Kenney, 90 Fed 257 (D Del) (1898). Indeed, as was said in Janko v United States, supra, at page 167: "the incorporation of an Allen charge among the original instructions might be, under most circumstances, less harmful to the defendant's cause than its use in supplemental instructions when a jury disagreement already exists."

Secondly, there is nothing coercive in the instruction. Its first paragraph, to which counsel did not allude, makes clear the duty of the court members to discuss the case and to allow "a full and fair opportunity to exchange their points of view and to persuade others to join them in their beliefs," it being "generally desirable to have the theories for both the prosecution and the defense weighed and debated thoroughly before final judgment." And, as to the second paragraph, of which complaint is made, it, too, only invites honest discussion of differing views on the guilt or innocence of the accused. Thus, it suggests listening to arguments of the other members with a disposition to be convinced and abhors the adoption, at the outset of the deliberations, of a fixed and unchangeable view, with a concurrent deafness to the arguments of the others, who are to be considered his peers in honesty and intelligence. Finally, it cautions against yielding one's judgment of the case simply because of the weight or number of the opposition. In short, the advice is an appeal to reason and an exhortation to keep open minds on the serious issues presented. There is nothing in it to predispose the members to conviction or to acquittal. It simply reminds them of their solemn obligation to try the case well and truly between the accused and the United

States. It points the fact finders in neither direction and cannot in anywise be said to be coercive. See Estes v United States, 335 F2d 609, 618, 619 (CA5th Cir) (1964), cert den, 379 US 964, 13 L ed 2d 559, — S Ct — (1965).

Indeed, much of the instruction's language appears to have been directly adapted from that of the Supreme Court in Allen v United States, supra. Thus, in that case, Mr. Justice Brown declared, at page 501:

"While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, *it by no means follows that opinions may not be changed by conference in the juryroom.* The very object of the jury system is to secure unanimity *by a comparison of views and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the juryroom with a blind determination that the verdict shall represent his opinion of the case at that moment; or that he should close his ears to the arguments of men who are equally honest and intelligent as himself.* There was no error in these instructions." [Emphasis supplied.]

The similarities between the advice here and that in *Allen,* supra, do not, as the defense urges, import reversal. To the contrary, it points toward affirmance, for that was the result there obtained, the Supreme Court finding "no error in these instructions." Allen v United States, supra, at page 502. The *Allen* case has been much criticized, but it still represents the law, even if it be characterized as "the outermost limit" to which a judge may go, Green v United States, 309 F2d 852, 854 (CA 5th Cir) (1962), or as approaching " 'ultimate permissible limits,' " Powell v United States, 297 F2d 318 (CA 5th Cir) (1961), at page 321. But it has remained the law despite such attacks, with reversals coming usually when a trial judge adds to it comments or exhortations wrongly informing the fact finders that it was incumbent upon them to reach a verdict. Jenkins v United States, 380 US 445, 13 L ed 2d 957, 85 S Ct 1059 (1965) ; United States v Jones, 14 USCMA 177, 33 CMR 389; Annotations, 85 ALR 1420, 19 ALR2d 1257.

Nor do we find any relevant distinction, in considering the sufficiency of this instruction, in the fact that jury findings of guilt or innocence are required to be unanimous, whereas a verdict of guilty in the general or special courts-martial is reached, in the usual case, "by the concurrence of two-thirds of the members present at the time the vote is taken." Code, supra, Article 52, 10 USC § 852. True it is that, absent such concurrence, acquittal results. United States v Nash, 5 USCMA 550, 18 CMR 174; United States v Valentin, 5 USCMA 559, 18 CMR 183; United States v Stewart, 7 USCMA 232, 22 CMR 22. But either finding requires agreement of some sort—two-thirds concurring in a conviction and more than one-third agreeing in order to acquit. Necessarily discussion and changes of viewpoint, together with possibilities of deadlock may arise, as, for example, when protracted reballoting is forced, as it may be, by a simple majority of the court, not amounting to the two-thirds necessary for conviction. See United States v Nash, supra, concurring opinion of Judge Brosman; Code, supra, Article 52. Hence, in this respect, we see no distinction between the need for unanimity of decision in civilian jurisdiction and the differing military requirements.

In United States v Jones, supra, we held an instruction which required the court members to arrive at a sentence to be coercive and prejudicial. There, we extensively discussed the problems involved in *Allen*-type charges, and emphasized "the basic philosophy on which this country is established—the right of free men to disagree without being penalized therefor." United States v Jones, supra, at page 180. We adhere to the views which we there stated, but

430

the instructions here in nowise conflict with them or any other principle of law. We conclude, therefore, the law officer did not err in delivering them to the court-martial in order to emphasize the importance of its role, both to the United States as a sovereign and to the accused as a citizen whose future depended upon its decision, a matter, we think, not lightly to be decided.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge KILDAY concur.