UNITED STATES, Appellee

v

PHILIP D. LASSITER, Specialist **Four,**
U. S. Army, Appellant

18 USCMA 154, 39 CMR 154

No. 21,444

March 7, 1969

*Captain Eugene W. Murphy, Jr.,* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Lieutenant Colonel Martin S. Drucker, Captain Stephen Arinson,* and *Captain Anthony F. Cilluffo.*

*Captain Benjamin G. Porter* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick, Major Edwin P. Wasinger,* and *Captain William R. Steinmetz.*

## Opinion of the Court

DARDEN, Judge:

A general court-martial convicted the accused of unpremeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918, and imposed a sentence of dishonorable discharge, total forfeitures, confinement at hard labor for five years, and reduction of Private E-1. The appellate process has brought no reduction to either the finding or the sentence.

Of the several errors alleged by the accused on appeal, we deemed one worthy of further consideration. It is:

Whether the law officer erred to the substantial prejudice of the appellant when he failed to give adequate and complete instructions to the court about the procedures and voting requirements for reconsideration of its findings upon the specific inquiry of the court concerning this matter.

The altercation that formed the basis for the charge of murder against the accused had its beginning at the Nam Cuong Restaurant located in Qui Nhon, Republic of Vietnam. According to the record of trial, the accused became embroiled over the amount of his bill. Ultimately, the restaurant owner's son confronted the accused, after which the latter left. A short time later, however, he returned, having purchased a knife, and ordered a refreshment. When told none was available, he grasped the owner's hand, causing the latter to flee. His shouts of fear brought forth the son from the back of the establishment. Stabbed by the accused, the youth fell in the doorway as the accused escaped. Death resulted from the wound inflicted.

154

The father, after seeing the boy in the hospital, returned to the restaurant, where he obtained a meat cleaver and then "chased after" the American. The father contended that he did not "retaliate." Nonetheless, accused was eventually found by military police in an alley on his knees, bloodied from head wounds. He was removed to a hospital by the military police, who had a difficult time holding him in his wounded but infuriated state. He repeatedly asserted that the Vietnamese had tried to kill him.

Accused testified that he had questioned a waiter regarding his change and when the latter walked to the cashier's area accused followed in an attempt to make either the waiter or restaurant owner understand his problem. However, the victim and other Vietnamese pushed him out of the building. He returned and called to the owner who began circling a partition between two doors. The owner then stopped near a table and placed his hand near a knife, causing the accused to reach into his own pocket. As the two talked, the accused noted the presence of a second Vietnamese holding a metal object in his hand. When the owner started walking toward him, accused then decided it was time to leave. In carrying out this decision, he pulled the knife from his pocket and swung the arm to keep the old man back, fearing attack by the son. This arm motion was also designed to point the accused toward the door for a successful escape. He intended to hit no one but admitted having the knife for protection if attacked. He had returned to the restaurant only to talk to the proprietor about being shortchanged. When he reached the door, accused asserted that he was struck and fell in the street. He was then beaten and kicked but escaped by running down an alley. Cornered by a crowd, he was finally rescued by military police.

Instructions given covered elements of unpremeditated murder, and of the lesser included offenses of voluntary and involuntary manslaughter. Instructions were also given on self-defense, character evidence, use of depositions, and the credibility of witnesses. The law officer further advised:

"A finding of not guilty results as to any Specification or charge, if no other valid finding is reached thereon. This means that if 5 members concur in a finding of guilty, the finding of guilty results. If less than five members vote for a finding of guilty, the ballot has resulted in a finding of not guilty. However, the court may reconsider any finding, including one of not guilty, before it is formally announced in open court. The court may also reconsider any finding of guilty, on its own motion, at any time before it has first announced the sentence in the case. In the event the court desires to do this, to reconsider the findings, the court should reopen, and additional instructions should be requested."

Finally, at 10:37 a.m., September 3, 1967, the court closed to consider the question of innocence or guilt. Reopening moments later, the following exchange then occurred:

"PRES: Court has one question. Would you repeat to us the instruction you gave on the voting percentages required?

"LO: In order to convict, two-thirds of the members of the court must vote for a conviction, in this case, with a 7 member court, because a fraction counts as one, two-thirds would be five men.

"PRES: Then our one question is: In the event the vote is taken, and five members do not vote for a finding of guilty; is the accused automatically acquited [sic].

"LO: Unless a member desires to propose that the matter be reconsidered. The court can vote, on the voting, not guilty of the principle [sic] offense, but guilty of the lesser included offense, in that fashion sir.

"PRES: That was our question.

"LO: Court is closed."

Accused was later found guilty as previously shown.

Appellate Government counsel be-

lieve that the law officer's instructions were correct but, if in error, nonprejudicial. They feel that the president's question concerns the voting on the lesser included offense—in an event of a finding of not guilty on the principal charge—rather than a reconsideration on a finding. They allude to the law officer's advice, set out above, regarding reconsideration of the findings and are satisfied that nowhere is it indicated the court had reached a verdict it desired to change. Appellate Government counsel note that no objection was made at the trial level to the instructions given and that the court was closed for only five minutes before it reopened. Such circumstances indicate to their satisfaction that the court's concern had not gone beyond a discussion of the voting procedures before confusion developed requiring clarification of that issue.

Our earlier cases of United States v Nash, 5 USCMA 550, 18 CMR 174, and United States v Stewart, 7 USCMA 232, 22 CMR 22, are distinguished by appellate Government counsel as being instances where the court was incorrectly advised that the president had the sole power to request reconsideration of the findings. In the present case, the instructions are simply considered incomplete rather than erroneous. Unlike those cases, contend appellate Government counsel, in this instance the president was placed on the same footing as other court members.

The present issue contains basic questions that were considered in both *Nash* and *Stewart*. In *Nash*, for example, we found that a portion of paragraph 74*d*(3), Manual for Courts-Martial, United States, 1951, authorized the casting of more than one ballot on findings. This Manual provision reads in part:

". . . A finding of not guilty results as to any specification or charge if no other valid finding is reached thereon; however, a court may reconsider any finding before the same is formally announced in open court. The court may also re-

consider any finding of guilty on its own motion at any time before it has first announced the sentence in the case."

We concluded:

". . . Since the Manual language is consistent with good civilian and military practice, and since it announces principles which underlie a fair and just trial, we support it . . . ." [5 USCMA, at page 553.]

Similarly, appropriate voting procedures are to be found in Article 52, Uniform Code of Military Justice, 10 USC § 852. We said of it:

". . . [W]e have no doubt that . . . [the Code] inferentially sets out the correct procedure to be followed. After establishing in subparagraphs (*a*) and (*b*) the voting requirements for conviction and sentencing, Article 52 of the Code, 50 USC § 627, provides in subparagraph (*c*) that all other questions to be decided by the members of a general or special court-martial shall be determined by a majority vote. When this Article is interpreted together with the provisions of the Manual to the effect that the court may reconsider any finding before it is announced in open court, it follows that this is a question to be decided by the members. Counsel for the Government advance no argument to the contrary and we find no basis for any." [5 USCMA, at page 554.]

Both these prior cases contained instructions giving the president of the court-martial the power and prerogative of permitting reballoting on findings. Such advice is erroneous for, as we said in *Stewart*, 7 USCMA, at page 234, it "unduly elevated the status of the president over the remaining members of the court."

The instructions given here permitted "any member," including the president, to bring about reballoting. Appellate Government counsel's representations to the contrary, the differences of instructional guidance in these cases are "at best one of de-

gree." In this case, as in *Nash* and *Stewart*, the instructions gave the impression that one man had the power which was rightly invested in only the majority. Lassiter, too, "had a right to have the question of whether there should be further voting decided by a majority vote of the court-martial members and he was denied that right." United States v Nash, supra, at page 554. In this factual surrounding, we believe that prejudice follows in the wake of this instructional error.

The testimony in this record of trial is in conflict, for the accused presents a defense. In addition, the evidence is such that instructions on lesser included offenses were required. Moreover, only sheer conjecture supports Government's argument that the president's question referred to voting on lesser included offenses rather than reconsideration on findings and that the court's concern had never gone beyond a discussion of voting procedures during their short closed session. To the contrary,

" . . . We feel that there was a reasonable probability that the error in the instant case may have affected the court's verdict. The accused has no mechanical apparatus, capable of extrasensory perception,

with which he can accurately gauge the contents of the court's collective mind. If there is a reasonable probability that prejudice resulted, the findings must be set aside. Little v United States, 73 F2d 861 (CA10th Cir) (1934)." [United States v Stewart, supra, at pages 234–235.]

Indeed, in *Nash,* we reversed saying:

" . . . What transpires in a closed session must remain inviolate and we have no way of ascertaining precisely what did happen in this instance; but when an accused has been denied the collective judgment of a majority working in a secret session and he is precluded from ascertaining what occurred, he is the victim of an error which materially prejudices one of his substantial rights." [5 USCMA, at pages 554–555.]

In view of the foregoing, the decision of the board of review is reversed and the record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge QUINN and Judge FERGUSON concur.