# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*

**UNITED STATES, Appellee**
v.
**Private E1 DAQUARIES K. ROBINSON**
**United States Army, Appellant**

ARMY 20230533

Headquarters, U.S. Army Fires Center of Excellence and Fort Sill
Jacqueline L. Emanuel, Military Judge
Colonel Kristian W. Murray, Staff Judge Advocate

For Appellant: Major Tumentugs D. Armstrong, JA; Major Patrick J. Cashman, JA (on brief); Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert D. Luyties, JA; Major Patrick J. Cashman, JA (on specified issue brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Chase C. Cleveland, JA (on brief); Colonel Richard E. Gorini, JA; Major Lisa Limb, JA; Captain Vy T. Nguyen, JA (on specified issue brief).

4 September 2025

---------------------------------
OPINION OF THE COURT
---------------------------------

SCHLACK, Judge:

Appellant was convicted, pursuant to his pleas, of desertion and absence without leave in violation of Articles 85 and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 885 and 886 (1956) [UCMJ]. On appeal before this court, appellant submitted his case for review on its merits. A panel of this court, on its own motion, then specified the following issue: whether the military judge erred by accepting appellant's guilty plea to desertion beginning on or about 4 November 2019 when appellant averred his intent to permanently remain away formed in March 2023. After receiving briefs from both parties, the court sua sponte considered appellant's appeal en banc.

We hold the military judge did not err in accepting appellant's plea to the offense of desertion commencing on or about 4 November 2019 even though appellant's intent formed later in his absence. We therefore affirm the findings of guilty and the sentence.

## BACKGROUND

Appellant twice absented himself from his unit at Fort Sill, Oklahoma, the first absence ranging from 27 December 2018 until 24 September 2019. Six weeks later, and relevant to this appeal, on 4 November 2019, for the second time, appellant left his unit and traveled to Fayetteville, North Carolina. In 2021, appellant left Fayetteville and moved to central Texas. Sometime in March 2023, appellant obtained work at the Moxie Pest Control company. As part of this job, appellant solicited homeowners to purchase pest control services. Eventually, at least one homeowner filed a complaint against appellant, which resulted in police officers stopping him on 13 June 2023 for soliciting without a permit. After conducting a background check on appellant's license, the police officers learned of appellant's military deserter status. They arrested him, and appellant was shortly thereafter returned to military control.

Appellant entered into a plea agreement and stipulation of fact with the government that described when appellant intended to remain permanently away from his unit. According to the stipulation of fact, appellant "formed the intent to remain away from his unit permanently once he obtained employment at Moxie Pest Control near Dallas, Texas and stabilized his family[.]"

During appellant's providence inquiry with the military judge, appellant stated he formed an "intent to stay away for good" when he moved to Texas in 2021. Appellant also stated when he returned to military control, it was involuntary because he "had no intent to come back around that time." Although the military judge did not ask whether appellant's intent to remain away permanently formed at anytime before starting his job at Moxie Pest Control or whether his intent changed throughout the duration of his absence, the military judge concluded appellant's plea to desertion for the period charged was provident. The military judge sentenced appellant to a bad-conduct discharge and confinement for thirty days.[1]

## LAW AND DISCUSSION

The court reviews "a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea de novo." *United States v. Kim*, 83 M.J. 235, 238 (C.A.A.F. 2023) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). "During a guilty plea inquiry, the military judge is charged with determining whether there is an adequate basis in law and fact to support the plea before accepting it." *Inabinette*, 66 M.J. at 321-22 (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). "A military

---

[1] The military judge sentenced appellant to thirty days of confinement for the desertion offense and fifteen days of confinement for the AWOL offense; to run concurrently.

2

judge abuses his or her discretion by 'fail[ing] to obtain from the accused an adequate factual basis to support the plea—an area in which we afford significant deference' or if his or her ruling is based on an erroneous view of the law." *Kim*, 83 M.J. at 238 (alteration in original) (internal citation omitted).

Desertion is a uniquely military offense pre-dating even the Articles of War. *See* Article of War 58 (1920). The elements of the offense have remained relatively unchanged since its codification in Article 85 of the Uniform Code of Military Justice, reflected in the 1951 *Manual for Courts-Martial, United States* [*MCM,* 1951].[2] The offense of desertion is committed by a member of the armed forces, who, "without authority goes or *remains* absent from his unit, organization, or place of duty with intent to remain away therefrom permanently." UCMJ art. 85 (emphasis added). As appellant here did not "go" from his unit with an intent to remain away permanently, we focus on the *actus reus* of "remaining" away.

The "intent to remain away permanently need not . . . be formed in the mind of the accused at the moment of departure . . . ." for an appellant to be found guilty of desertion. *United States v. Haliburton*, 9 U.S.C.M.A. 694, 695-96, 26 C.M.R. 474, 475-76 (1958). "The crime of desertion can be established by the showing of an absence with a concurring intent, at the commencement of or at some time during the absence, to remain away permanently." *United States v. Fisher*, 7 U.S.C.M.A. 270, 275, 22 C.M.R. 60, 65 (1956). This statement of law from our superior court is echoed in the Manual for Courts-Martial. *See Manual for Courts-Martial, United States* (2019 ed.), pt. IV, ¶ 9.c(1)(c)(i) ("The intent to remain away permanently . . . may be formed any time during the unauthorized absence. The intent need not exist throughout the absence . . . as long as it exists at *some time* during the absence.") (emphasis added); *see also United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (affirming appellant's conviction where a rational factfinder could have determined appellant "manifested an intent to remain away permanently *at some point* during his absence . . . ." (emphasis in original)).

Appellant's providence colloquy details a factual scenario contemplated by Article 85, UCMJ. Appellant told the military judge that he left without authority but did not possess the requisite intent to remain away permanently at that time. Appellant then described forming the required *mens rea* while he "*remain[ed] absent*" – clearly establishing both the required *actus reus* and *mens rea* during the date range charged by the government. The fact appellant formed his intent to

---

[2] Under the *MCM*, 1951, "[a]ny member of the armed forces who . . . without proper authority goes or remains absent from his place of service . . . with intent to remain away therefrom permanently" was guilty of desertion. UCMJ art. 85. We note the Court of Military Appeals very first opinion was about the legal sufficiency of a desertion conviction. *United States v. McCrary*, 1 C.M.R. 1 (1951).

3

remain away permanently toward the end of his period of absence simply does not matter for findings.[3]

This conclusion is underscored by the fact that desertion and absence without leave are not continuing offenses. *United States v. Ray*, 7 U.S.C.M.A. 378, 379, 22 C.M.R. 168, 169 (1956) ("Desertion is not a continuing offense, and is committed on the date when the accused absents himself without authority, intending not to return."); *see also* Rule for Courts-Martial 907(b)(2) discussion ("Absence without leave, desertion . . . are not continuing offenses and are committed, respectively, on the day the person goes absent, [or] deserts . . . ."). As our predecessor reiterated in *United States v. Welsh*, "the offense is committed but once" – on the day the soldier quits the service with the intent not to return.[4] 33 C.M.R. 502, 504 (A.B.R. 1963).

---

[3] The dissent's premise that the appellant cannot be in violation of Article 85, UCMJ, on each day *prior* to forming the intent to remain away permanently is true and perhaps even relevant to other considerations such as aggravation or mitigation for sentencing but is irrelevant to the legal conclusion that appellant is guilty of desertion.

[4] The Army Board of Review preceded the Army Court of Military Review. *See* Military Justice Act of 1968, Pub. L. No. 90-632, § 866, 82 Stat. 1335, 1341-42 ("Each Judge Advocate General shall establish a Court of Military Review" with any reference to "board of review" in the statute being replaced with "Court of Military Review"). While the initial opinions of the Boards of Review, executed under Article 50 ½ of the Articles of War, were advisory, they became binding upon the implementation of the Uniform Code of Military Justice in 1951. *Compare* Article 50 ½, The Articles of War (1920) (noting opinions of the Boards of Review were executable only with the concurrence of the corresponding Judge Advocate General, with any dissention between the two being resolved by the President via the Secretary of War), *with* Article 66(e), Uniform Code of Military Justice, 50 U.S.C. § 653, 64 Stat. 108, 128-29 (1951) ("The Judge Advocate General shall, unless there is to be further action by the President or the Secretary of the Department or the Court of Military Appeals, instruct the convening authority to take action in accordance with the decision of the board of review."). Opinions by boards of review have historically been viewed as precedential for subsequent action by the succeeding service court. *See United States v. Nelson*, 53 M.J. 319, 323 (C.A.A.F. 2000) (noting a 1954 Air Force decision was not binding on the CAAF nor a sister court, implying it was binding in other Air Force tribunals); *see also United States v. Crawford*, 27 C.M.R. 797 (A.B.R. 1959) ("the approved sentence falls within the rule of [two prior Army Board of Review decisions] and in the light of those precedents must be corrected."), *and United States v. Monroe*, 26 C.M.R. 660, 661 (A.B.R. 1958) ("We consider that the cited decision [by the Army Board of Review]

(continued . . .)

> The nature of the offense of desertion requires that the entire period of absence be characterized in the pleadings as "in desertion" although the proof of the intent could be dependent upon the acts or statements of the accused made within any time of the absence – at the beginning, during, or even at the conclusion thereof.

*Id.* at 504. Thus, appellant need only form the requisite intent one time while absent without leave to be guilty of desertion. The requisite *actus reus* and *mens rea* do, in fact, coincide at the time the intent is formed. Because desertion is not a continuing offense, the length of the absence before the intent formed or continued thereafter is irrelevant to the question of guilt. Said differently, appellant was not convicted of Article 85, UCMJ, for the entirety of his absence. Rather appellant was convicted for having formed the requisite *mens rea* while he remained absent on at least one day.

## CONCLUSION

On consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.[5]

Chief Judge FLOR, Senior Judge POND, Judge MORRIS, Judge WILLIAMS, Judge JUETTEN, and Judge COOPER, concur.

---

(. . . continued)
is inapplicable as a precedent to a factual situation such as we have in this case."). We find additional support in treating decisions of the Army Board of Review as binding, unless we elect to reverse a prior opinion, under the general principle of *stare decisis*. *See United States v. Quick*, 74 M.J. 332, 335-36 (C.A.A.F. 2015) ("adherence to precedent 'is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991))).

[5] Pursuant to a plea agreement, the government, after arraignment but prior to the announcement of findings, withdrew and dismissed one specification of making a false official statement in violation of Article 107, UCMJ.

The "Findings Worksheet" of the Statement of Trial Results, incorporated into the Judgment of the Court, erroneously lists this specification as a violation of Article 134, UCMJ. As this scrivener's error goes to the findings of the court-martial, we elect to correct it to reflect the correct article with which appellant was charged by substituting "134" with "107". *See United States v. Williams*, 85 M.J. 121 (C.A.A.F. 2024).

Judge WILLIAMS, with whom Chief Judge FLOR, Senior Judge POND, and Judge MORRIS, join, concurring.

I fully concur with the majority opinion. I write separately to highlight the President's stated elements plainly provide appellant only had to manifest the required intent to remain away permanently "at some time during the absence . . . ." *Manual for Courts-Martial, United States* (2019 ed.) [*MCM*, 2019], pt. IV, ¶ 9.b.(1)(c). Because both the statute and President's specified element are clear, an accused may form the intent to remain away at any point during his absence, I see no need to disrupt the longstanding understanding of how the crime of desertion should be charged.

President Reagan specified elements for the crime of desertion in 1984 when he reissued the *Manual for Courts-Martial.* Executive Order 12,473, 49 Fed. Reg. 17,152, 17,302 (April 13, 1984) [Exec. Order 12,473].[6] They have not changed. *Compare Manual for Courts-Martial United States* (1984 ed.), pt. IV, ¶ 9.b.(1)(a)–(d), *with Manual for Courts-Martial, United States* (2024 ed.), pt. IV, ¶ 9.b.(1)(a)–(d). Germane to this case, the salient element provided, "[t]hat the accused, at the time the absence began *or at some time during the absence*, intended to remain away from his or her unit, organization, or place of duty, permanently . . . ." *MCM*, 2019, pt. IV, ¶ 9.b.(1)(c) (emphasis added). Consequently, the President only required the government prove the accused formed the specific intent to remain away permanently at some point.

Importantly, there is no tension between the statute and the elements provided by the President. Each plainly provides the *mens rea* required for desertion may be formed after he absents himself from his unit without authority. *Compare* Uniform Code of Military Justice art. 85, 10 U.S.C. § 885 (observing the crime of desertion is committed when an accused "goes *or remains absent* . . . ." with requisite intent) (emphasis added), *with MCM*, 2019, pt. IV, ¶ 9.b.(1)(c) (providing an accused is guilty of desertion if "at some time during the absence, intended to remain away permanently."). "[A]bsent a contrary intention in the Constitution or a statue, [an appellate court] should adhere to the Manual's elements of proof." *United States v. Guess*, 48 M.J. 69, 71 (C.A.A.F. 1998); *United States v. Stradtmann*, 84 M.J. 378, 381 (C.A.A.F. 2024). Accordingly, both the statute and elements provided by the President are consistent and do not require appellant's absence and intent to remain

---

[6] Executive Order 12,473, effective 1 August 1984, rescinded the *Manual for Courts-Martial, United States*, 1969 (Rev. ed.) [*MCM*, 1969]. 49 Fed. Reg. at 17,152. Although rescinded, both the *MCM*, 1969 and the *Manual for Courts-Martial, United States* (1951 ed.) [*MCM*, 1951] required as proof on the element only, "[t]hat [the accused] intended, at the time of absenting himself or at some time during his absence, to remain away permanently . . . ." *MCM*, 1969, ¶ 164(a)(1); *MCM*, 1951 ¶ 164(a)(1).

away permanently be coterminous, and his conviction is legally sufficient as charged. *Guess*, 48 M.J. at 71.

The maximum punishment for desertion, unlike the crime of absence without leave, remains the same irrespective of the duration of the absence. Whether appellant deserted for 1,317 days or 1 day, the maximum punishment for his crime remained a dishonorable discharge, confinement for three years, and forfeiture of all pay and allowances. Accordingly, there is no need to parse out periods from the time span charged.

While immaterial to his punitive exposure, the charged date span appropriately accounted for appellant's entire period of absence. This method of accounting serves several important roles. First and foremost, it provides clarity to the field in how to charge and prove a quintessential military crime. Further, it shields an accused from multiple convictions for one prolonged and unbroken absence.[7] Simply stated, the government merely must prove the accused left on a date certain, returned on a date certain, and at some point in time manifested the required intent.

Additionally, this charging approach creates a record that captures the entirety of an absence and guides the effective administration of pay, allowances, and service time computation. Periods of absence must be made good. *See* 10 U.S.C. § 972(a) (observing an enlisted soldier who deserts is liable, upon return, "to serve for a period that, when added to the period . . . served before his absence from duty, amounts to the term for which he was enlisted or inducted."). Thus, the charged period makes clear the remaining service requirement for an accused not discharged. Also, the span charged makes clear appellant's entitlement – or lack thereof – to pay and allowances.[8] In short, the period charged has meaning for the efficient

---

[7] In accordance with the reasoning of the dissent, appellant would be guilty of absence without leave, in violation of Article 86, UCMJ, from 4 November 2019 to 31 March 2023. And then he would be guilty of desertion, in violation of Article 85, UCMJ, from 1 April to 13 June 2023. It is difficult to see how a panel would address a circumstance where an accused, during a prolonged absence, vacillated between intent to never return and moments where he intended to return. Further, would the trier of fact be required to account for periods of time when an accused suffered severe mental illness or intoxication and could not form specific intent to remain away permanently?

[8] Soldiers who desert forfeit all pay and allowances, to include the first day of desertion. Dep't of Def. Reg. 7000.14-R, Financial Management Regulation, vol. 7A, ch. 1, table 1-12 (May 2024). Soldiers, absent without authority, are not

(continued . . .)

administration of the armed forces and it does not affect the appellant's punitive exposure. Therefore, I see no need to disrupt the longstanding understanding of how desertion is charged and litigated.

FLEMING, Senior Judge, with whom PENLAND, Senior Judge, STEELE, Judge, and MURDOUGH, Judge, join, dissenting.

My dissent is not based on whether appellant committed the crime of desertion. He did. I respectfully depart from the majority's conclusion, however, that appellant committed the offense of desertion beginning on or about 4 November 2019. Appellant asserted in the stipulation of fact and his providence colloquy that his specific intent to remain permanently away from his unit formed in March 2023. The government could have challenged appellant's assertion, but instead agreed his specific intent to remain permanently away from his unit formed in March 2023.

Under this unique situation, I find the military judge abused her discretion accepting appellant's guilty plea to desertion, commencing on or about 4 November 2019, when appellant asserted, and the government agreed, that his specific intent to remain permanently away from his unit (the applicable *mens rea* for a desertion offense) did not form until March 2023. My dissent should not be misconstrued as an endorsement that the government must change the manner or method in pleading a desertion offense (i.e., charging a desertion specification which begins on or about the date an accused initially goes absence from his unit). Instead, my sole focus is on an appellate resolution in this case – ensuring this court only affirms a finding of guilty which is supported by appellant's record of trial.

The majority correctly notes desertion is not a continuing offense and is committed at the moment the accused goes (or remains) absent with the requisite intent. I find, as discussed below, that the record of trial establishes appellant first formed his specific intent in March 2023. Appellant's stipulation of fact, agreed to by the government, included multiple references to the timeframe when appellant formed his intent to remain permanently away from his unit. According to the stipulation of fact, appellant "formed the intent to remain away from his unit permanently once he obtained employment at Moxie Pest Control near Dallas, Texas and stabilized his family[.]"

---

(. . . continued)
entitled to pay and allowances if their absence was avoidable. *Id.* Although absences may be accounted through administrative means, courts-martial for unauthorized absences definitively result in forfeiture of pay and allowances for the period of absence. *Id.* at ch. 1, para. 4.2.2.1. Administrative determinations of absence are subject to additional review and findings. *Id.* at para. 4.2.2.2.

The timing of appellant's decision to remain permanently away from his unit was also discussed during his providence colloquy with the military judge:

> ACC: Once I started working at a good job [at Moxie Pest Control company], that's when I decided that I wasn't going to be coming back [to the Army], because I was making good money and I was taking care of my kids as well so.
>
> MJ: So around when was it that you decided you weren't coming back?
>
> ACC: It was in March of 2023, Your Honor.

Although the stipulation of fact and the discussion above established a March of 2023 timeframe, appellant also discussed an intent to remain permanently away from his unit as possibly occurring when he moved to Texas in 2021. Appellant's discussion with the military judge regarding his move to Texas in 2021 is below:

> MJ: Okay, but at some time during your absence, did you intend to remain away from your unit permanently?
>
> ACC: It was when I had moved to Texas, that's when I had formed that intent to stay away for good.

The military judge, however, failed to conduct further inquiry clarifying appellant's above statement. As the stipulation of fact and the providence colloquy much more clearly delineate a specific timeframe (March of 2023) tied to a particular event (appellant securing employment at the Moxie Pest Control company), I find appellant's specific intent to desert his unit formed in March 2023.

I agree with the majority opinion that the offense of desertion is committed by a member of the armed forces, who, "without authority *goes* or *remains* absent from his unit, organization, or place of duty with intent to remain away therefrom permanently." UCMJ, art. 85 (emphasis added). As appellant did not "go" from his unit with an intent to remain away permanently, I focus on his *actus reus* of "remaining" away.

The "Elements" paragraph for desertion asserts an appellant's specific intent may be formed either "at the time the absence began *or at some time during the absence . . . .*" *Manual for Courts-Martial, United States* (2019 ed.) [*MCM*], pt. IV, ¶ 9.b.(1)(c) (emphasis added). I agree with this general theory, but I do not interpret this language to stand for the proposition that, if appellant's specific intent arose "at some time during the absence," his newly formed specific intent (*mens rea*) must then retroactively apply to the date of his initial "going." Most notably, Article 85,

UCMJ, remains silent as to the validity of a retroactive application of a specific intent *mens rea* to an earlier *actus reus*.

A criminal act is completed by one who engages in a prohibited act while possessing the required criminal intent, or *mens rea*.[9] *See Mens rea*, Webster's Third New International Dictionary (1961) ("the intent or state of mind accompanying an act, manifesting a purpose harmful to society, providing no justification for the act, and subjecting the perpetrator thereof to criminal punishment: criminal as distinguished from innocent intent."). The "Explanation" paragraph for desertion appears to incorporate this concept stating "[d]esertion with intent to remain away permanently *is complete* when the person absents himself or herself from his or her unit . . . with the intent to remain away therefrom permanently." *MCM*, pt. IV, ¶ 9.c.(1)(a) (emphasis added).

The "Elements" and "Explanation" sections of the UCMJ are not statutory; instead, they are promulgated by Executive Order. *See MCM*, pt. IV, Discussion, at IV-1. This court will not read these provisions in such a way that alleviates or lessens the burden imposed on the government to establish the guilt of an appellant, as defined by Congress via the UCMJ, beyond a reasonable doubt. *Ellis v. Jacob*, 26 M.J. 90, 92-93 (C.M.A. 1988) ("[t]he President's rule-making authority does not extend to matters of substantive criminal law"); *United States v. Margelony*, 14 C.M.A. 55, 57-58, 33 C.M.R. 267, 269-70 (1963) (the "Elements" may "be disregarded if they are 'no more than an attempted addition to the statute of something which is not there.'" (internal citations omitted)).

After analyzing the "Elements" and "Explanation" paragraphs of Article 85, UCMJ, I scoured the landscape regarding desertion jurisprudence to find analogous cases where an appellant established an identifiable moment in time in which he formed the specific intent to remain away permanently, to which the government agreed, that was clearly distinct from the moment when his absence began. My search revealed little.

To the contrary, desertion jurisprudence is replete with instances where: (1) appellant denied forming such an intent;[10] (2) the opinion is silent regarding

---

[9] "Intent" is defined as "the design or purpose to commit any wrongful or criminal act that is the natural and probable consequence of other voluntary acts or conduct." *Intent*, Webster's Third New International Dictionary (1961) (second definition).

[10] *E.g.*, *United States v. Oliver*, 70 M.J. 64, 64-66 (C.A.A.F. 2011) (affirming conviction based on circumstantial evidence in a contested case, notwithstanding appellant's contention that he "always had an intent to [report to his duty station].");

(continued . . .)

precisely when appellant's intent was formed and the government's proof centers on circumstantial evidence;[11] or (3) where the intent to remain away indefinitely was

---

(. . . continued)

*United States v. Adams*, 74 M.J. 589, 590-93 (Army. Ct. Crim. App. 2015) (setting aside appellant's conviction when appellant pled guilty to the lesser included offense and the only evidence offered by either party to prove the "intent to remain away" element was appellant's providence inquiry and his sworn testimony in which he consistently asserted an intent to return); *United States v. Condon*, 1 M.J. 984, 989 (N.M.C.M.R. 1976) (affirming sufficiency of conviction where appellant testified at trial that he intended to return); *United States v. Parra*, No. ACM S32653, 2021 CCA LEXIS 653, at *10-11, 23 (A.F. Ct. Crim. App. 2 Dec. 2021) (un. pub.) (affirming sufficiency of conviction where appellant testified at trial that he intended to turn himself in to the nearest base once his family was settled in their new home).

[11] *E.g., United States v. Matheny*, 19 U.S.C.M.A. 39, 39-40, 41 C.M.R. 39, 39-40 (1969) (affirming guilty plea to desertion where appellant married, took over a family business, and moved from Indiana to California); *United States v. Murray*, ARMY 20020609, 2004 CCA LEXIS 415, at *9-10, 15 (Army Ct. Crim. App. 11 May 2004) (mem. op.) (affirming guilty plea to desertion where appellant fled after initiation of UCMJ action, was gone for nine months, and was arrested approximately 160 miles from his unit); *United States v. Williams*, ARMY 9900143, 2001 CCA LEXIS 405, at *3-5 (Army Ct. Crim. App. 21 Aug. 2001) (mem. op.) (setting aside desertion conviction where only evidence of appellant's intent was appellant's flight after a pretrial confinement hearing versus stipulated testimony of a law enforcement agent that stated appellant had contacted the office and informed them that he intended to return the following day, which he did); *United States v. Wilson*, 2024 CCA LEXIS 53, at *3-6 (A.F. Ct. Crim. App. 5 Feb. 2024) (affirming imposition of punitive discharge for desertion where appellant was arrested near the Canadian border after having moved nearly $10,000.00 between bank accounts and investigating "Canadian words" and area information, and formed the intent to remain away "[a]t some point during the drive . . . ."); *United States v. Ricks*, 2019 CCA LEXIS 176, at *15 (N.M. Ct. Crim. App. 16 Apr. 2019) (un. pub.) (affirming sufficiency of conviction where appellant fled after being notified of command intent to place appellant in pretrial confinement, despite testimony he intended to return to his ship to confront his commanding officer about the justification for pretrial confinement); *United States v. Hassoun*, No. 201500204, 2016 CCA LEXIS 478, at *10-11 (N.M. Ct. Crim. App. 2016) (affirming conviction for desertion where appellant expressed dissatisfaction with service prior to leaving, moved to a new country after liquidating his bank account, obtained employment in his new country to support his family, and remained absent for nine years).

formed contemporaneously with the start of the absence.[12]

The most analogous case to the situation at bar is *United States v. Welsh*. 33 C.M.R. 502 (A.B.R. 1963). In *Welsh*, appellant left his unit on 17 May 1951, during the "Korean conflict." *Id.* at 503-04. When appellant was questioned, "after the findings [phase] concerning his absence . . . . as to when he decided he was never going back, he stated: 'It is a hard question to answer – it could have been a year, it could have been six months'" after his departure. *Id.* at 503. On appeal, our predecessor (the Army Board of Review (CMR)), appeared to accept appellant's factual assertion regarding his specific intent to desert from Korea on a date later than 17 May 1951; yet affirmed a desertion conviction commencing on that date. *Id.* at 504. The opinion is silent as to whether the government, at trial, agreed with appellant's statement made during the pre-sentencing phase of his trial.

Initially, the CMR asserted a desertion "is committed on the date when the accused absents himself without authority intending not to return." *Id.* The CMR, however, added "[t]he nature of the offense of desertion requires that the entire period of absence be characterized in the pleading as 'in desertion' although the proof of [specific] intent could be dependent upon the acts or statements of the accused made within any time of the absence – at the beginning, during, or even at the conclusion thereof." *Id.*

I agree with *Welsh* regarding two general premises: (1) a desertion offense should typically be charged (in the pleading) as commencing on or about the date an accused departs (goes from) his unit; and (2) an accused can manifest through words or deeds at the "beginning, during, or the conclusion" of his offense a specific intent to remain permanently away from his unit. Where I part ways with *Welsh* (and the "Elements" paragraph discussed above) is the extent those authorities can be interpreted to stand for the proposition that the start date of a desertion can occur prior to an accused possessing the specific intent to remain away permanently. Again, I do not read the plain text of Article 85, UCMJ, to authorize a retroactive application of a specific intent *mens rea*.

I recognize a variety of reasons an appellant might remain silent, or even inaccurately assert a later date, regarding when he formed his specific intent to remain away permanently from his unit. The government, however, is not required to accept appellant's assertion of a later date. Instead, the government can contest the specification (or a portion thereof) and offer circumstantial evidence to the contrary. "The intent to remain away permanently may be proved by circumstantial

---

[12] *E.g.*, *United States v. Le*, 59 M.J. 859, 860 (Army Ct. Crim. App. 2004) (affirming all but four days of appellant's conviction for desertion when appellant fled his unit with the intent to remain away but was under duress for the first four-day period).

evidence." *MCM*, pt. IV, ¶ 9.c.(1)(c)(iii). A court can consider, among other factors, whether:

> the period of absence was lengthy; that the accused . . . was arrested . . . . a considerable distance from the accused's station; that the accused could have conveniently surrendered to military control but did not; . . . [and] that the accused made preparations indicative of an intent not to return (for example, financial arrangements) . . . .

*Id.*

In this case, the government did not challenge appellant's assertion regarding a date of March 2023 but agreed – vitiating any recourse to circumstantial evidence that may have proven an earlier date. Appellant, in both the stipulation of fact and providence colloquy, articulated that he formed the specific intent to remain absent from his unit sometime in March 2023 when he obtained meaningful employment at Moxie Pest Control company. This date occurred more than three years after his absence began. In other words, for the three years preceding appellant's employment at Moxie Pest Control, the government agreed he lacked the specific intent to remain away permanently from his unit.

The majority opinion, in support of their analysis, appears to assert the text of the "Elements" and "Explanation" sections possess plain meaning. I am not convinced. Given these facts, applying the "Elements" and "Explanation" sections, without further scrutiny, would result in appellant being convicted of a specific intent crime for a timeframe in which his guilty plea failed to establish he possessed the specific intent to commit that crime.

I acknowledge there is a large amount of circumstantial evidence that, absent appellant's assertion, could be indicative of his intent to remain permanently away from his unit well before March 2023.[13] These circumstantial facts simply cannot stand alone when juxtaposed with appellant's manifestation that he only formed the intent to remain away permanently in March 2023; to which the government agreed. *See also United States v. Saul*, __ M.J. __, 2025 CAAF LEXIS 578, at *4-5 (C.A.A.F. 21 July 2025) (noting a military judge may not rely on circumstantial evidence when inquiring into the providence of a guilty plea when an otherwise permissible inference directly conflicts with the accused's own statements). As our superior court has recently reminded us, dates matter, not just in pleading but in

---

[13] For instance: (1) the length of appellant's absence; (2) that appellant departed his unit for a second time after having just returned from a lengthy AWOL; (3) that appellant lived in Fayetteville, North Carolina—the home of the 18th Airborne Corps and Fort Bragg — for approximately two years and failed to turn himself in; and (4) appellant moved to Texas in 2021.

proof. *See United States v. Patterson*, __ M.J. __, 2025 CAAF LEXIS 548, at *11 (C.A.A.F. 14 July 2025) ("the specification alleged a date range, and the Government did not prove that the offense occurred within the range.").[14]

While appellant may have been guilty of the lesser included offense of AWOL for the time leading up to March 2023, I find it was error for the military judge to accept his plea of guilty to desertion commencing on or about 4 November 2019.

Having found error, I am now challenged with a dilemma regarding the time period between 4 November 2019 and 30 March 2023.[15] Appellant admitted to being AWOL during that entire period, the government agreed, and a factual basis, in the stipulation of fact and providence colloquy, exists to affirm an AWOL offense under Article 86, UCMJ.[16] In this unique situation, I do not think converting this AWOL period into a separate specification under Article 86, UCMJ, is an appropriate result as appellant would then be convicted of two offenses (an AWOL and a desertion), as opposed to one. Appellant did not bargain for this result in his plea agreement or request such relief on appeal. On the other hand, I am hesitant to set aside or dismiss that time frame within the Article 85, UCMJ, desertion offense, as the government also bargained with appellant for a conviction reflecting that entire period.

I find my solution in *United States v. Scott*, 59 M.J. 718 (Army Ct. Crim. App. 2004). In that case, on appeal, our court affirmed two separate periods of AWOL within a singular specification. *Id.* at 723. The initial period started at appellant's absence (16 August 2002) until the date she voluntarily returned to the unit (11 September 2002), and the second period, began on the following day when she again departed (12 September 2002) and ended when she was apprehended (5 November 2002). *Id.* at 720-23. Although Article 86, UCMJ, contemplates such a remedy and

---

[14] Our superior court in *Patterson* also advises practitioners that "potential problems concerning dates alleged in a specification often can be addressed and avoided before a case reaches appellate review . . . . if the government's understanding of the evidence changes after a specification has been drafted, the government might seek to change the specification under R.C.M. 603 or withdraw the specification under R.C.M. 604." 2025 CAAF LEXIS 578, at *12. But, in both *Patterson* and this case, "[t]he Government declined to take any of these corrective steps despite being aware of the discrepancy between the specification and evidence presented at trial." *Id.* at *13.

[15] As appellant provided no date specific in March, I would amend the start date of his desertion offense to the latest possible day in March 2023 (31 March 2023).

[16] Absent Without Leave is the lesser included offense of desertion. *United States v. Adams*, 74 M.J. at 590; *see also MCM*, App'x 12A.

Article 85, UCMJ, does not, I find the rationale equally applicable to appellant's case, wherein a factual predicate (in this case appellant's specific intent to remain away) changed mid-absence. I would modify the desertion specification for which appellant was found guilty, to ensure he was found guilty of, and subsequently punished, for only the misconduct he committed.[17]

I would affirm only so much of the findings of guilty of the Specification of Charge I (the desertion specification) as follows:

> In that [appellant], U.S. Army, did, on or about 4 November 2019, without authority, absent himself from his unit, to wit: 2nd Battalion, 4th Field Artillery Regiment, located at 3418 Babcock Road, Fort Sill, Oklahoma, and did, on or about 31 March 2023, with the intent to remain away therefrom permanently, remain so absent in desertion until he was apprehended on or about 13 June 2023.

This modified specification lists the date of appellant's absence from his unit (4 November 2019) (the commencement of an AWOL offense) and further delineates the commencement of his desertion offense on or about 31 March 2023. Having lessened the timeframe as to when appellant committed the offense of desertion, I would reassess appellant's sentence. *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013); *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986). Appellant was originally sentenced to a bad-conduct discharge and thirty days of confinement for his two convictions.

Given the length of absence as to his first conviction, that appellant left the armed forces a second time, therein later forming the intent to permanently remain away from his unit, and his desertion was terminated by his apprehension, I am confident the military judge would have adjudged the same sentence.[18] Furthermore, I would also find this reassessed sentence appropriate under Article 66, UCMJ.

---

[17] *MCM*, pt. IV, ¶ 10.c.(11) ("An accused may properly be found guilty of two or more separate unauthorized absences under one specification, provided that each absence is included within the period alleged in the specification and provided that the accused was not misled.").

[18] Even assuming arguendo I incorrectly amended appellant's desertion conviction to include his absence commencing on 4 November 2019, appellant agreed the facts listed in his stipulation of fact, including his absence from his unit from 4 November 2019 until 30 March 2023, could be considered as aggravation evidence on appeal.

PENLAND, Senior Judge, with whom FLEMING, Senior Judge, and STEELE, Judge, join, dissenting.

I join Senior Judge Fleming's dissent in every respect. I write separately to crystallize things. This Court radically agrees appellant deserted his unit. But we disagree over the affirmed inception date, based on an equally radical disagreement over one of criminal law's first principles.

The government proved nothing in this case – no criticism there, for appellant obviated that burden by pleading guilty and waiving his right to a trial. This constrains our decisional facts to the providence inquiry and stipulation of fact, and both tell us he formed the "intent to remain away therefrom permanently" in March 2023. In this case, the Court cannot circumstantially infer a more specific, earlier date; doing so would create an irreconcilable conflict with the providence inquiry and stipulation of fact. *See United States v. Saul*, 2025 CAAF LEXIS 578, at *4-5 (C.A.A.F. 21 July 2025).

In pertinent part, Article 85, Uniform Code of Military Justice, 10 U.S.C. § 885, prohibits a soldier from "go[ing] or remain[ing] absent . . . *with*" a specific intent. (emphasis added). "With" is no legalese – it is a plain and simple word, meaning: "alongside of," "accompanying," and "inclusive of." *With*, Webster's Third New International Dictionary (2002).

"That a crime is comprised of both an actus reus and a mens rea necessarily means both components must exist at the time an offense is committed if the offense is to amount to a crime at all." *United States v. Rodriguez*, 79 M.J. 1, 3 (C.A.A.F. 2019) (internal citation omitted). This principle harmonizes with our superior court's desertion-specific jurisprudence and the Manual's restatement, and it is plain from Article 85, UCMJ.[19]

On the inception date affirmed by the majority, appellant was absent from his unit without (*with's opposite*) the sanctioned specific intent. He had not yet deserted. Based on this record, his desertion began in March 2023. In my view, this Court lacks authority to affirm a conviction for desertion (or any other crime) on a date where neither proof, providence inquiry, nor stipulation establish the required *mens rea*.

We should modify and affirm the guilty finding elegantly proposed by my dissenting colleague. Or, we should modify and affirm a guilty finding that provides "between on or about" the dates charged, appellant absented himself from his unit

---

[19] Senior Judge Fleming's description of the Manual's limited effect is an especially apt reminder to practitioners.

with the intent to remain away permanently therefrom, and did remain so absent in desertion until he was apprehended on the terminal date charged.

FOR THE COURT:

//JAMES W. HERRING, JR.
Clerk of Court